172 So. 159

**MARTINEZ v. ORLEANS PARISH
SCHOOL BOARD.**

No. 33931.

Jan. 4, 1937.

E. M. Robbert, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for appellant.

Louise Louque Burton, James J. Landry, and George Montgomery, all of New Orleans, for appellee.

LAND, Justice.

(1) The plaintiff is the holder of a batch of school certificates, about 213 in number, amounting to $8,906.95, issued by the Board of School Directors in 1874, 1875, and 1876, under the provisions of Act No. 36 of 1873, for teachers' salaries and other expenses of the public schools in the city of New Orleans.

This case was here before, on an appeal taken by plaintiff from a judgment sustaining an exception of no cause or right of action and plea of prescription of ten years, which are again pleaded in the case at bar.

On that appeal, the judgment of the Civil District Court was reversed; the exception of no right or cause of action and the plea of prescription were overruled, and the case was remanded to the Civil District Court for trial on its merits. Martinez v. Orleans Parish School Board, 155 La. 116, 98 So. 860. Having tried the case, the Civil District Court gave judgment for the plaintiff for the amount sued for, with legal interest from judicial demand.

The defendant appealed from that decision and, in Martinez v. Orleans Parish School Board, 173 La. 114, 136 So. 287, 288, we affirmed our former ruling in Martinez v. Orleans Parish School Board, 155 La. 116, 98 So. 860, to the effect that the right of action of plaintiff did not arise until the adoption of Act No. 214 of 1912 and that, inasmuch as the suit was brought within ten years after the passage of the act, the action was not prescribed. We based that ruling upon the authority of Gasquet v. Board of Directors of City Schools, 45 La.Ann. 342, 12 So. 506, and announced that our ruling in Martinez v. Orleans Parish School Board, 155 La. 116, 98 So. 860, was "the law of this case."

■ The exception of no right or cause of action and the plea of prescription of ten years, pleaded by defendant School Board in the instant case, are therefore overruled.

■ (2) As stated in Martinez v. Orleans Parish School Board, 173 La. 114, 117, 136 So. 287, 288: "On its merits, the case is governed by the ruling in Gasquet v. School Directors, 45 La.Ann. 342, 12 So. 506. In the syllabus of the decision it was said, of the certificates of the same tenor as the certificates held by the plaintiff in this case:

" 'The title of plaintiff depends on proof of indorsement of the certificates by the parties to whom they were payable.' "

"In the opinion which we rendered in this case [Martinez v. Orleans Parish School Board, 155 La. 116, 98 So. 860], on the exception of no cause or right of action and on the plea of prescription, we did not direct attention to the fact that, under the ruling in the Gasquet Case, the plaintiff would be required to prove that the certificates which he holds *were indorsed or assigned* by the parties to whom they were issued. We said that the plaintiff should be given judgment for the amount of such certificates as he might

prove to be correct and valid; but we did not mean by that *to dispense with proof of the assignment or indorsement* of such certificates." 173 La. 114, 119, 136 So. 287, 288. (Italics ours.)

As to the status of the certificates sued on in Martinez v. Orleans Parish School Board, 173 La. 114, 136 So. 287, 288, it is said at page 118 of the opinion: "Among the certificates sued on in this case we find 7 that are not indorsed at all; 19 indorsed not by the persons to whom they were issued but by other parties per procuration, without any proof of authority, or proof of the genuineness of the signatures of the parties who made the indorsements; 16 certificates on which the names of the indorsers do not correspond with the names of the persons to whom the certificates were issued; and 10 certificates purporting to be indorsed by parties other than the parties to whom the certificates were issued, 9 of which certificates purport to bear the 'mark' of the parties to whom they were issued, and one of which does not even have the so-called 'mark' to represent the signature of the party to whom it was issued. The other certificates—about 161 in number—appear to have been indorsed by the parties to whom they were issued, *but, as to these certificates, no one undertook to identify the signature of any one of the supposed indorsers; and it would seem almost incredible that any one could identify these signatures fifty years after they were written.* We are constrained, therefore, to follow the ruling in the Gasquet Case, and dismiss this suit, as in case of nonsuit."

which was done accordingly. (Italics ours.)

The present suit was filed in the Civil District Court for the parish of Orleans February 18, 1932, on 213 school certificates totalling the sum of $8,906.95, with interest prayed for from judicial demand, November 22, 1917, and all costs of suit. Judgment was rendered in favor of plaintiff and against the Orleans Parish School Board March 31, 1936, in the sum of $7,702.19, with legal interest from judicial demand, November 22, 1917, and for all costs, and from this judgment the Orleans Parish School Board has appealed.

In the Gasquet Case, decided in February, 1893, recovery was had on certificates of the same tenor as the certificates held by the plaintiff in this case; but in that case the circumstances constituted corroborative evidence of the genuineness of the indorsements on the mass of the certificates, and only 19 years had elapsed from the date of issuance of the first certificates in 1874.

In reviewing the testimony in that case (45 La.Ann. 342, 344, 345, 12 So. 506, 507), the court said: "The main witness is one C. W. Boothby, who, during most of the period covered by the certificates, had been superintendent of the public schools, or a member of the board and chairman of the committee on teachers, in which capacities he received weekly and monthly reports, and many other communications, from the teachers, and also had the duty of superintending the pay rolls, and seeing

that they were properly signed by the teachers and other employees.

"He thus, *from constant inspection*, became, naturally, well acquainted with their signatures; and we find nothing incredible in his ability to recall them, when exhibited to him, even after the lapse of years." (Italics ours.)

In the instant case, the testimony of plaintiff as to the indorsements of these certificates was taken in 1933, or 59 years after the first issue in 1874. The strong corroborative circumstances in the Gasquet Case as to the genuineness of the indorsements are absent from the case at bar; "* * * and it would seem almost incredible that any one could identify these signatures fifty years after they were written," to use the language of Chief Justice O'Niell in discussing these same certificates in Martinez v. Orleans Parish School Board, 173 La. 114, 119, 136 So. 287, 288.

Plaintiff's case rests upon the testimony of three witnesses, Charles M. Morales, Miss Eliska Louque, and Mrs. Louise L. Burton.

The following certificates were handed to Mr. Morales for the purpose of identifying the indorsements, after being marked as exhibits as follows: Nos. 43, 65, 66, 67, 68, 89, 120, 122, 124, 125, 126, 131, 178, 180, 197, 198, 205, 206, and 208. Tr., p. 13. Not one of these certificates was indorsed by the payee to whom it was issued.

Six of these certificates were made payable to portresses in the public schools of the city of New Orleans: Nos. 89, 197, 198, 205, 206, and 208. In each instance, we find the name of each payee indorsed on the certificate, by her mark, and signed by C. Moore (Charles Moore) who, Mr. Morales testified, advanced money to school teachers on their salaries, and had authorization to sign their names. On objection made to the testimony that C. Moore had authorization to sign their names, plaintiff failed to produce any powers of attorney, which were demanded by defendant. The indorsements on these certificates, therefore, have not been legally proved, although Mr. Morales testified that he knew the signature of Charles Moore.

On seven of these certificates, Nos. 43, 65, 68, 120, 122, 124, and 125, the name of the payee has been indorsed by E. V. Hitch. On certificates Nos. 98 and 180, the name of the payee is indorsed by E. V. Hitch, "Asst. Cash."

Mr. Morales testified that E. V. Hitch was assistant cashier of the Citizens Savings Bank; that he knew him well; recognized his signature; that the bank advanced money to these school teachers; and that he had seen the powers of attorney.

When defendant demanded that the powers of attorney be produced, the witness replied: "They were in the bank. Get the records of the old Citizens Savings Bank and you will get the powers of attorney." Tr., p. 17.

These powers of attorney were not produced. Necessarily, the authorization of E. V. Hitch, as assistant cashier of the

Citizens Savings Bank, to make these indorsements was not proved, and they are without any validity whatever.

On two of the certificates, Nos. 126 and 178, the indorsement of the payees is made by M. Benner. Mr. Morales testified that: "The cashier of the bank was named M. Benner, but he was an old figurehead. Hitch was the man who done all the work for the bank."

"That is Benner's signature, I will swear to it, but I very seldom have seen it." Tr., p. 18.

After testifying that "You will find very few certificates with Benner's name on them," the witness was asked by counsel for plaintiff:

"Did you see the authority of the school teachers or the power of attorney from the school teachers to the Citizens Savings Bank to endorse those certificates for them?"

The witness answered: "Yes, I saw it 100 times, maybe." Tr., p. 19.

This question and answer were objected to by defendant; and the purported power of attorney was not produced later. These indorsements also are evidently without validity.

On three of these certificates, Nos. 66, 67, and 131, there are indorsements "good without indorsement," signed by John J. O'Brien, secretary. Mr. Morales identified his signature, and stated that he was connected with the mortgage office, and whenever any certificates had to be certified as correct, he used to certify them. Tr., p. 19.

As it was held in Gasquet v. Board of Directors of City Schools, 45 La.Ann. 342, 12 So. 506, that: "The title of plaintiff depends *on proof of indorsement* of the certificates by parties to whom they were payable," and as we announced in Martinez v. Orleans Parish School Board, 173 La. 114, 119, 136 So. 287, 288, that "under the ruling in the Gasquet Case, the plaintiff would be required to prove that the certificates which he holds *were indorsed or assigned* by the parties to whom they were issued," the indorsement on these three certificates, "good without indorsement," fails to transfer title to plaintiff whether John J. O'Brien, who made them, was connected with the mortgage office or with the School Board, as its secretary. (Italics ours.)

Mr. Morales testified that he and Mrs. Burton, accompanied by plaintiff's attorney, went to the vault of the Civil District Court to look at these certificates together, and that he was not able to identify any of the signatures of the teachers that signed certificates. Tr., pp. 14 and 15. Although Mr. Morales stated that he "had operated in over $14,000,000.00 of those certificates, buying and selling, at different times," he was not qualified to identify the signature of a single teacher to any of them. Tr., p. 21.

The certificates sued upon were issued in 1874, 1875, and 1876, or about 60 years ago. All of the school teachers to whom these certificates were issued are dead because of the great lapse of time. Years ago, the late Senator Charles Louque handled a case for the school teachers. It appears from the record that his two

daughters, Miss Eliska Louque and Mrs. Louise L. Burton, were in his office during this litigation, when payments were made to some of the teachers, payees, and indorsers in this case, who had sold some of their certificates, which plaintiff claims to have acquired.

From their recollection of the signatures of these teachers, who signed their names to receipts when paid off at Senator Louque's office, they both testify that the indorsements of the same teachers on the certificates in this case are genuine. Neither of those witnesses is a handwriting expert, and neither pretends that she saw the payees of these certificates indorse same. Their testimony depends entirely on the fact that these witnesses saw these parties sign other documents and receipts in such matters. Mrs. Louise L. Burton, one of these witnesses, testified: "I saw them sign when I first came to the office, and in 1901, and in 1904 and 1905, and later, when they would come in and sign. After that they were not paid until 1917, and I wasn't in the office." Tr., p. 57.

Miss Eliska Louque testified that she was in her father's office for 25 years and worked there every day, and that she recognized the signatures on five of the certificates. Mrs. Burton claims to recognize the signatures of more than 100 alleged payees.

This case was tried in the lower court in 1933, or 28 years after Mrs. Burton saw the last signatures made to the receipts. These circumstances do not militate against the credibility of these witnesses, but go rather to the effect of their testimony, as we believe that both witnesses are perfectly sincere and honest in their opinions that the indorsements on the certificates were the signatures of the parties which they purported to be. But the testimony of both of these witnesses is merely opinion evidence, at best, and upon which there might well be a wide difference of opinion, even among handwriting experts. Naturally, and necessarily its weight is affected by the long lapse of time in the case, and does not therefore satisfy the judicial mind, with that degree of reasonable certainty upon which a final judgment in favor of plaintiff should be based in this case.

Besides, the certificates sued upon are not negotiable instruments, the title to which may be transferred to the holder by mere indorsement and delivery. These certificates are not payable to bearer, or to the order of the payee; but merely certify that a certain sum of money is payable to the person named therein as payee.

It is contended, however, that six of these certificates are negotiable. These certificates, on their face, are not negotiable in terms, and, in our opinion, cannot be made so by an extraneous written order signed by the payee, and annexed to each of the certificates, to pay the amount of the certificate to the order of the payee named in the order annexed to the certificate. If such written orders may be considered as assignments, then the bar to plaintiff's recovery on these assignments is the insufficiency of the evidence to prove the signatures of the assignors.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that plaintiff's demand be rejected, and that plaintiff's suit be dismissed at his costs.

ROGERS, J., absent.